UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

    Plaintiff,

  v.             Case No. 19-cr-40063-JPG

TYZIA S. GIBBS,

    Defendant.

**MEMORANDUM AND ORDER**

  This matter comes before the Court on defendant Tyzia S. Gibbs's *pro se* motion for

compassionate release pursuant to the First Step Act of 2018, Pub. L. No. 115-391, § 603(b)(1),

132 Stat. 5194, 5239 (2018) (codified at 18 U.S.C. § 3582(c)(1)(A)), and its supplement (Docs.

53 and 55).  The Government has responded. (Doc. 63). Gibbs filed a reply. (Doc. 64).

**I.**  **Compassionate Release**

  The First Step Act expanded the existing compassionate release provisions of federal law

by opening the door for a defendant to move for compassionate release rather than only allowing

the Director of the Bureau of Prisons ("BOP") to so move.  First Step Act, § 603(b)(1) (codified

at 18 U.S.C. § 3582(c)(1)(A)); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020).  The

relevant portion of the law provides:

  **(c) Modification of an imposed term of imprisonment.**—The court may not modify a
term of imprisonment once it has been imposed except that—
    (1) in any case—
      (A) the court, upon motion of the Director of the Bureau of Prisons, or
      upon motion of the defendant after the defendant has fully exhausted all
      administrative rights to appeal a failure of the Bureau of Prisons to bring a
      motion on the defendant's behalf or the lapse of 30 days from the receipt
      of such a request by the warden of the defendant's facility, whichever is
      earlier, may reduce the term of imprisonment (and may impose a term of
      probation or supervised release with or without conditions that does not
      exceed the unserved portion of the original term of imprisonment), after

considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
    (i) extraordinary and compelling reasons warrant such a reduction. . .
and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. . . .

18 U.S.C. § 3582(c)(1)(A).

In exhausting administrative remedies, the defendant must have asserted the same or similar issues as grounds for relief in his request to the warden as he does in his motion for compassionate release. *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021). Otherwise the warden is not equipped to properly consider the defendant's request.

As for the final clause of § 3582(c)(1)(A), there is no applicable Sentencing Commission policy statement regarding motions for compassionate release filed by defendants. *Gunn*, 980 F.3d at 1180. The existing compassionate release policy statement, United States Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13, applies only to motions filed by the BOP, not defendants themselves, "[a]nd because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion." *Id.* Nevertheless, the substantive aspects of U.S.S.G. § 1B1.13 provide a "working definition" of "extraordinary and compelling reasons" that should guide the Court's discretion without strictly confining it. *Id.* A court that "strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id.* Additionally, the Court should give substantial weight to the BOP's analysis regarding "extraordinary and compelling reasons" in any particular case. *Id.*

So the Court looks to U.S.S.G. § 1B1.13 for guidance. That policy statement adds the provision that the defendant must not be a danger to the safety of any other person or to the

community.  U.S.S.G. § 1B1.13(2).[1]  The application notes further define "extraordinary and

compelling reasons" to include, as relevant for this case:

**(A)    Medical Condition of the Defendant.—**
   (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
   (ii)   The defendant is—
          (I)    suffering from a serious physical or medical condition,
          (II)   suffering from a serious functional or cognitive impairment, or
          (III)  experiencing deteriorating physical or mental health because of the aging process,
          that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

\* \* \*

**(D)    Other Reasons.—**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n. 1.

Thus, for a defendant to be eligible for compassionate release she must have exhausted

his administrative remedies,[2] and the Court must find that (1) extraordinary and compelling

reasons for release exist, and (2) considering the applicable factors in 18 U.S.C. § 3553(a), the

extraordinary and compelling reasons warrant release.  18 U.S.C. § 3582(c)(1)(A).  The movant

bears the burden of making such a showing, and the Court has discretion to determine whether

the defendant satisfied that burden.  *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021);

---

[1] This provision is similar, but not identical, to 18 U.S.C. § 3553(a)(2)(C), which requires the Court to consider the need for the sentence "to protect the public from further crimes of the defendant."
[2] The exhaustion requirement is not jurisdictional and may be waived by the Government.  *Gunn*, 980 F.3d at 1179.

*Gunn*, 980 F.3d at 1180.  The Court uses U.S.S.G. § 1B1.13 cmt. n. 1 to guide its discretion in this regard and should give great weight to the BOP's analysis regarding "extraordinary and compelling reasons," if it has given any such analysis.  *Gunn*, 980 F.3d at 1180.  The Court now turns to the specifics of the defendant's case.

## II.     Analysis

In November 2019, Gibbs pled guilty to two counts of distribution of methamphetamine. of Before Gibbs' sentencing, U.S. Probation prepared a pre-sentence report ("PSR") filed (Doc. 26). ¶. Gibbs' advisory guideline range was 60-71 months' imprisonment with an adjusted offense level of 23 and criminal history category III. (PSR at ¶¶ 34, 62). Gibbs pled guilty without a plea agreement. At the defendant's sentencing in July 2020, the Court sentenced Gibbs to a term of imprisonment of 60 months as to Counts I and 2 of the indictment, a term of 4-years supervised release, $200 fine, and $200 special assessment. (Doc. 40).

After Gibbs was sentenced in July 2020, she filed a motion for extension of time to report to the Bureau of Prisons because of scheduled chemotherapy treatments. (Doc. 44). In said motion, Gibbs indicated that she was diagnosed with breast cancer on August 6, 2002.[3] *Id*. Gibbs' projected release date is July 13, 2025, and is currently incarcerated in Carswell FMC in Fort Worth, Texas. *See* BOP, Find an Inmate, https://www.bop.gov/inmateloc/ (visited August 8, 2022).

Gibbs starts by asking the Court to direct the BOP to release her to home confinement or probation because of the special danger posed to her from COVID-19. She states her motion should be granted because of the "extraordinary and compelling reasons" confronting the federal prison system posed by the COVID-19 pandemic, the fact Gibbs has stage two breast cancer,

---

[3] This looks to be a typographical error and defense counsel meant to state 2020, not 2002.

Gibbs is not a danger to the community, suffers from conditions the CDC designated vulnerable persons, and further because the 18 U.S.C. 3553(a) factors weigh in her favor. (Doc. 53). Specifically, she states her immune system is very weak and COVID-19, as well as new variants, pose a substantial risk to her. *Id*. She notes that FMC Carswell is "not licensed or medically certified as a hospital level facility" and therefore cannot provide "advanced COVID-19 care." *Id*. Additionally, she states that her doctors advised that she *not* receive the vaccine. *Id*. at 2. Additionally, she states she has enrolled in classes and is working on her rehabilitation. *Id*. In her supplement, Gibbs states she requests to be released on home confinement. (Doc. 55 at 1).

In response, the Government argues that Gibbs should not be entitled to compassionate release because she does not meet her burden of "extraordinary and compelling circumstances." The Government responds and agrees Gibbs has breast cancer and has been receiving chemotherapy treatment. (Doc. 63 at 5).

Specifically, the Government states that Gibbs' medical records has refused to receive the COVID-19 vaccine. *Id*.; Doc. 63-2 ("COVID: declined"). *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) (A prisoner who can show that he is unable to receive or benefit from a vaccine still may turn to this statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an "extraordinary and compelling" reason for immediate release."). Therefore, the Government argues, Gibbs cannot argue COVID-19 is an "extraordinary and compelling" reason for release when she "declined the vaccine without an adequate medical justification." (Doc. 63 at 5).

Gibbs responds by stating *Broadfield* was "wrongheaded [sic] decision made in a vacuum utterly lacking in any significant medical understanding of COVID-19 variants…" (Doc. 64 at 3). She states that "injection information pamphlets" "state that they are not recommended for

immunosuppressed individuals." *Id*. at 4. Further, Gibbs cites that "multiple studies and news articles have documented adverse reactions that immunocompromised individuals have had to so called 'vaccines' for COVID-19." *Id*. After citing the New England Journal of Medicine, University of Oxford Study, and other reports, Gibbs states that "injections are not intended to prevent infection pursuant to the 'vaccine' manufacturers own information." *Id*. at 5. She states she "may suffer damage to her already compromised immune system which has already been weakened by cancer and chemotherapy" if she gets the vaccine. *Id*.

The Court does not believe *Broadfield* was wrongly decided, nor decided in a vacuum. Here, the medical records do not show that her doctors advised her not to take the COVID-19 vaccine. In fact, the entry in Gibbs' medical records state "Covid vaccine – Will scheduled. Recommended Flu vaccine. Pt agrees to Covid Vaccine but will wait on the Flu vaccination." (Doc. 63-1). Clearly, this entry belies Gibbs' claim that her doctors advised her not to take the COVID-19. Gibbs' does not provide this Court a showing that she is unable to receive or benefit from the vaccine.

The Seventh Circuit Court of Appeals recently discussed and affirmed the reasoning in the *Broadfield* decision. Specifically, the Seventh Circuit *rejected* defendant's request to reconsider *Broadfield*. *United States v. Clemons*, No. 21-2440, 2022 WL 1436801, at *1 (7th Cir. May 6, 2022) ("Clemons asks us to reconsider our decision in *Broadfield*, asserting that the CDC's understanding of vaccines has changed, and new variants are more likely to infect people who have been vaccinated or, like him, previously infected."). The Seventh Circuit reiterated that "[d]espite the threat of new coronavirus variants," an inmate's risk of COVID-19 cannot justify compassionate release absent an inability to receive or benefit from a vaccine. *Id*. at *2.

Other courts within this state have stated it is "inconsistent for [a defendant] to both claim

fear of risk of contracting the virus while refusing medical treatment that would drastically reduce his risk." *United States v. Garcia*, 2021 WL 1499312, at *3 (C.D. Ill. Apr. 16, 2021). In other words, a defendant "cannot, on the one hand, listen to the Centers for Disease Control's advice about who is most at risk of serious illness, but then ignore the same agency's advice to get a vaccine." *United States v. BaptisteHarris*, 2021 WL 1583081, at *2 (D. Me. Apr. 22, 2021). Consequently, a refusal to be vaccinated "weighs against a finding of extraordinary and compelling circumstance to justify relief." *Garcia*, 2021 WL 1499312, at *3.

The Court finds that Gibbs has not provided a showing that she cannot receive or benefit from the vaccine. She also has not provided any documentation from a treating physician that advised her not to take the COVID-19 vaccine. Gibbs is able to refuse the vaccine. However, she cannot simultaneously claim she is high risk for the virus and may face severe complications and then refuse the vaccine, which the Centers of Disease Control and Prevention has shown to offer protection against the virus for immunosuppressed people. COVID-19 Vaccines for Moderately to Severely Immunocompromised People, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#immunocompromised (last visited August 8, 2022). The Court therefore cannot find that there are "extraordinary and compelling" reasons to justify releasing Gibbs based on her generalized fears of COVID-19.

The Court acknowledges the particular danger posed to prisoners, who live in close quarters and often cannot practice social distancing. But, stated above, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . " *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). While *Broadfield* was issued before the rise of the Omicron variant of the COVID-19

virus, *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022), the Court notes that the BOP has reported there are 0 inmates who have tested positive for the virus in FMC-Carswell. Furthermore, the BOP has already administered more than 326,498 doses of a COVID-19 vaccine in total. There are currently 1,115 inmates at FMC- Carswell, where Gibbs is currently incarcerated, and it has inoculated 1,608 vaccines, s*ee* BOP, COVID-19 vaccine implementation, https://www.bop.gov/ coronavirus/ (visited August 8, 2022), which will greatly reduce the threat to inmates from the disease. Additionally, at FMC-Carswell there are currently 0 inmates who have tested positive for COVID-19. Additionally, 745 inmates have recovered from the virus. *See* BOP, COVID-19 Cases https://www.bop.gov/coronavirus/index.jsp (visited August 8, 2022).

        While fear of COVID-19 cannot independently justify compassionate release, and Gibbs refusal to be vaccinated weights *against* granting compassionate release, the Court considers whether or not Gibbs' cancer can justify compassionate release. Gibbs has breast cancer and her medical records indicate she has been receiving chemotherapy. *See* Doc. 63-1. Her records indicate "breast cancer on chemo presents for chronic care." (Doc. 63-2).

        The commentary to the Sentencing Guidelines explains that "extraordinary and compelling reasons exist" when "[t]he defendant is suffering from a terminal illness, (i.e., a serious and advanced illness with an end of life trajectory)," such as cancer or advanced dementia. U.S.S.G. § 1B1.13 n.1.(A)(i). The commentary also considers a defendant's medical condition to be an extraordinary and compelling reason if:

> [t]he defendant is suffering from a serious physical or mental condition, suffering from a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Here, Gibbs states she has not received the proper medical care she needs at Carswell. (Doc. 53).

Specifically, she states it took a "whole month to see a doctor to get my chemo medication" which caused complications and she lost 25 pounds due to lack of medical care. *Id*. Specifically, she states the chronic care unit at her facility "lacks in wall oxygen and basic heart defibrillators." *Id*. at 2. However, most of her concerns arise from whether COVID-19 will affect her with her immunocompromised state, and not regarding her continuing chemotherapy care. Further, as stated above, Gibbs declined the COVID-19 vaccine, which the Court weights against providing relief.

The records indicate she is receiving chemotherapy care. The medical records do not indicate that she is suffering deteriorating physical or mental health as a result of aging. In fact, she is 31 years old. While Gibbs alleges she had complications initially receiving chemotherapy care when she arrived at Carswell, her medical records indicate consistent medical care for her chemotherapy, mental health, and any other issues that have arisen. Therefore, Gibbs has not provided this Court "extraordinary and compelling reasons" to justify her release. *United States v. Proctor*, No. 21-2457, 2022 WL 1261762, at *1 (7th Cir. Apr. 28, 2022) (affirming district court denying compassionate release where inmate had rare blood cancer).

The Court believes it is still important for Gibbs to serve out the remainder of her sentence in prison because of the seriousness of her offenses. Gibbs was convicted of distributing methamphetamine in Murphysboro and was sentenced at the lowest end of the guideline range. The Court's analysis of § 3553(a) still apply to this day. The Court acknowledges the attempts Gibbs has made while in prison to make positive changes, such as enrolling in several classes. However, the factors weigh against release. Specifically, Gibbs has a lengthy history. (Doc. 63 at 8-9). While Gibbs argues that the Government wrongfully refers to this criminal history because they were expunged from her record, the Court refers to this criminal history since they are in the

PSR.[4] Gibbs was sentenced in July 2020 and has served around two years of her sentence. The Court believes she should serve the remainder of her sentence. *United States v. Ugbah*, 4 F.4th 595, 598 (7th Cir. 2021) ("Because Ugbah cannot establish an extraordinary and compelling reason for release, it was unnecessary for the district judge to consider the S3553(a) factors at all"). Gibbs has not provided this Court enough to justify extraordinary and compelling reasons to justify compassionate release.

For these reasons, the Court **DENIES** Gibbs' Motion for Compassionate Release (Doc. 53).

**IT IS SO ORDERED.**
**DATED: August 9, 2022**

/s/ J. Phil Gilbert
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**

---

[4] Gibbs argues that inclusion of the expunged cases in her PSR violates her Fifth and Fourteenth Amendments, the rules of evidence, and is outside the "10 year time frame for consideration for inclusion within a PSR." She additionally argues that she did not have enough time to read and review the PSR before her sentencing. Such an argument is not properly made in a motion for compassionate release but properly brought forth in a motion to correct sentence under 28 U.S.C. § 2255. *United States v. Williams*, 777 F.3d 909, 910 (7th Cir. 2015) (a motion attacking a sentence not authorized by a retroactive change in the Sentencing Guidelines is a motion to vacate under § 2255).